UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLEAR BLUE INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

v.                                                      Case No. 8:22-cv-1711-TPB-AEP

GEMINI INSURANCE COMPANY,
and CPWR LLC, d/b/a CAPITAL
CONTRACTOR SERVICES,

    Defendants/Counter-Plaintiffs.
_____/

**ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

This matter is before the Court on "Clear Blue Insurance Company's Motion for Summary Judgment" (Doc. 45), "Gemini Insurance Company's Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 47), and "CPWR LLC, d/b/a Capital Contractor Services' Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 48). The parties filed responses in opposition. (Docs. 52; 53; 54). After reviewing the motions, responses, court file, and record, the Court finds as follows:

**Background**

This is an insurance coverage dispute between two insurance companies. More specifically, the parties' motions present a dispute between a contractor and its insurer, on one side, and the subcontractor's insurer, on the other, over which

insurer is responsible for the cost of defending the contractor in a state court suit brought by an injured third party. Resolution of the motions turns on the interplay of the subcontract and the terms of the insurance policies issued by the subcontractor's and contractor's insurers. Because the facts are essentially undisputed, the motions present a legal issue for resolution by the Court as a matter of law.

### *The Underlying Suit for Personal Injuries*

CPWR LLC, d/b/a Capital Contractor Services ("CCS"), entered into a subcontract with Edgewater Restoration Services for Edgewater to perform work on the outside of a high-rise building using a suspended platform known as a "swing stage." Clifford Hippolyte, an independent contractor, was injured while on the swing stage and filed suit in state court in Miami-Dade County, Florida, against both Edgewater and CCS. Hippolyte's claims against CCS included theories of vicarious liability for the acts of Edgewater, as well direct liability.

### *Subcontract Terms*

The subcontract between CCS and Edgewater required Edgewater to indemnify CCS from claims, liability, damage, losses, and costs arising from the performance of the subcontract, including but not limited to, reasonable attorney's fees, caused in whole or in part by any act, omission, or default or of Edgewater or of CCS, with certain exceptions and limitations.[1] (Doc. 13-1 at ¶ 4 & Exh. C). The

---

[1] Consistent with the requirements of § 725.06(1), *F.S.*, the indemnification obligation excluded liability based on gross negligence, or willful, wanton, or intentional misconduct of CCS or its officers, directors, agents, or employees, or for statutory violations or punitive damages unless the latter resulted from the actions of Edgewater or its subcontractors or

subcontract also required Edgewater to obtain commercial general liability ("CGL") coverage in the amount of $2 million covering CCS as an additional insured. (*Id.* at ¶ 5b & Exh. C). The subcontract required that the coverage to be obtained by Edgewater contain a clause providing that coverage for CCS as an additional insured would be primary and noncontributory.[2] (*Id.*).

*Policy Terms*

Edgewater obtained CGL insurance from Clear Blue in the total amount of $2 million. However, this total was split between two policies, one primary and one excess, in the amount of $1 million each. (Docs. 1-2 (excess policy); 13-2 (primary policy). The excess policy, which is triggered by exhaustion of the primary policy, incorporates, or "follows," the terms of the primary policy except in situations where the excess policy directs otherwise or there is a conflict between the terms of the primary and excess policies, in which case the latter controls. (Doc. 1-2 at 8). The Clear Blue policies provide that a contractor is automatically made an additional insured when a contract between Edgewater and such a contractor requires it, as the subcontract does here with respect to CCS. (*Id.* at 9; Doc. 13-2 at 31, 78).

The Clear Blue primary policy contains provisions under which the policy is primary and noncontributory. (Doc. 13-2 at 56, 78). The excess policy, on the other

---

materialmen or their agents or employees. Indemnity for liability based on the actions of CCS or its agents or employees was capped at $2 million. Hippolyte's state court complaint does not allege gross negligence, willful wanton or intentional misconduct, or statutory violations, nor does it seek punitive damages.

[2] Insurance is "primary and noncontributory" when the insurance pays for covered claims up to the limits of coverage, and does not expect any contribution from other insurance that might exist to cover the same claims.

hand, contains an "other insurance" clause that states that the coverage it provides will be excess to any other coverage, whether primary, excess, or otherwise. (Doc. 1-2 at 11, ¶ 8). The Gemini policy insuring CCS contains an "other insurance" provision under which the coverage afforded is excess over other "primary" policies in which Gemini is an additional insured. (Doc. 1-3 at 23, ¶ 4).

***The Parties' Positions and the Course of Proceedings***

When Hippolyte filed the underlying suit, Clear Blue undertook to defend Edgewater, its named insured under the primary policy. Gemini initially undertook to defend CCS, but Clear Blue thereafter assumed the defense of CCS as an additional insured under its primary policy. Clear Blue settled the claims against Edgewater for $1 million, thereby exhausting the primary policy. Clear Blue, however, did not obtain a settlement on behalf of CCS, which remained as a defendant in the underlying lawsuit.

Clear Blue continued to defend CCS following exhaustion of Clear Blue's primary policy. Clear Blue contends, however, that it had no duty to do so because the "other insurance" provision in the excess policy affects the order in which the Clear Blue and Gemini policies apply. Specifically, Clear Blue contends that the "other insurance" provision of its excess policy trumps the "other insurance" provision in the Gemini policy and therefore Gemini must provide coverage for CCS and reimburse Clear Blue for the amounts Clear Blue has paid out for CCS's defense. Gemini and CCS disagree and argue that Clear Blue became obligated to provide the next layer of coverage for CCS under Clear Blue's excess policy once the

primary policy was exhausted, that Clear Blue retains the ongoing duty to defend and indemnify CCS, and therefore that it is Gemini who is entitled to reimbursement from Clear Blue for the defense costs Gemini paid on behalf of CCS prior to Clear Blue's assuming CCS's defense.

Clear Blue filed suit against Gemini and CCS, seeking a declaratory judgment based on these contentions. Gemini and CCS answered and filed counterclaims. In addition to the contentions just described, CCS's counterclaim seeks a declaration that Clear Blue's settling Hippolyte's suit only on behalf of Edgewater breached Clear Blue's contractual duty to defend and indemnify CCS.

Clear Blue moved to dismiss the counterclaim. Rather than address the controlling legal issues in the context of a motion to dismiss, the Court directed the parties to file motions for summary judgment directed to the underlying legal issues, and to submit any additional evidence they deemed appropriate. The parties accordingly filed summary judgment motions and responses. The issues are briefed and ripe for determination.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

"[S]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter

of law." *Joynt v. Star Ins. Co.*, 314 F. Supp. 3d 1233, 1237 (M.D. Fla. 2018) (quoting *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008)). It is well-settled that "the interpretation of an insurance policy is a question of law to be decided by the Court." *Desai v. Navigators Ins. Co.*, 400 F. Supp. 3d 1280, 1288 (M.D. Fla. 2019) (citing *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015)); *see also Chestnut Associates, Inc. v. Assurance Co. of Am.*, 17 F. Supp. 3d 1203, 1209 (M.D. Fla. 2014); *Szczeklik v. Markel Int'l Ins. Co.,* 942 F. Supp. 2d 1254, 1259 (M.D. Fla. 2013).

## Analysis

The cross-motions for summary judgment present a fundamental legal issue for resolution: whether, upon exhaustion of the Clear Blue primary policy, Gemini's policy or the Clear Blue's excess policy became responsible for the cost of defending CCS against Hippolyte's claims in the underlying suit.

Clear Blue argues that Gemini, rather than Clear Blue, is liable for the cost of defending CCS based on the "other insurance" provision contained in Clear Blue's excess policy. That provision purports to make Clear Blue's policy excess over any other insurance, whether primary, excess, or otherwise. Clear Blue contends that it is therefore entitled to have the defense costs it has paid on behalf of CCS reimbursed by Gemini, CCS's insurer. Gemini's policy, however, also has its own "other insurance" clause purporting to make Gemini's coverage excess over other "primary" insurance. Gemini and CCS also raise contractual interpretation

arguments based on the interplay of the provisions of the Clear Blue policies and the subcontract between CCS and Edgewater.

It has been observed that the resolution of competing "other insurance" clauses "is an area in which hair splitting and nit picking has been elevated to an art form. 'Other insurance' clauses have been variously described as: 'the catacombs of insurance policy English, a dimly lit underworld where many have lost their way,' a circular riddle, and 'polic[ies] which cross one's eyes and boggle one's mind.'" *See S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 201-02 (S.C. 1997) (footnotes omitted). From its previous experience attempting to reconcile competing "other insurance" clauses, the Court is inclined to agree with these sentiments. In this case, however, the Court need not descend into the "underworld" or even the "catacombs" to address the vagaries of "other insurance" provisions or the parties' arguments regarding contractual interpretation because the Court concludes that in the narrow factual situation presented here, the "other insurance" clause in Clear Blue's excess policy does not determine the order of coverage.

The majority rule is that where, as here, one party has contractually promised to indemnify another, the indemnitor's insurer is deemed to be primarily responsible for coverage of claims against the indemnitee, notwithstanding the inclusion of an "other insurance" clause in the insurance policy. *See, e.g., Pavarini Const. Co. (SE) Inc. v. Ace Am. Ins. Co.*, 161 F. Supp. 3d 1227, 1234-35 (S.D. Fla. 2015) ("[C]ourts disregard 'Other Insurance' provisions where, as here, there is a

contractual right of indemnification between the parties insured by the relevant policies."); *St. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, No. 05-80230-CIV, 2006 WL 1295408, at *4-5 (S.D. Fla. Apr. 4, 2006) ("[A] clear majority of jurisdictions give controlling effect to the indemnity obligation of one insured to the other insured over the 'other insurance' or similar clauses in the policies of insurance."); *Bruner & O'Connor on Construction Law*, § 11:375 (Aug. 2023 update) ("The majority of courts that have addressed this issue have determined that the parties' indemnity agreement governs over their respective policies' 'other insurance' clauses."); 15A *Couch on Insurance* § 219:1 (3d ed. Nov. 2023 update) ("[A]n indemnity agreement between the insureds or a contract with an indemnification clause, such as is commonly found in the construction industry, may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy.").[3]

The parties have argued the case under Florida law, and the Court assumes that Florida law governs interpretation and application of the contracts at issue in this case. *See, e.g.*, *Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 n.1 (11th Cir. 1983) ("[B]ecause the parties rely upon Florida law, we presume its applicability."). The district court in *St Paul Fire & Marine*, citing *Allstate Ins. Co. v. Fowler*, 480 So. 2d 1287 (Fla. 1985), as well as other decisions from Florida, the

---

[3] *See also St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 276-77 (4th Cir. 2004) (Va. law); *Am. Indem. Lloyds v Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 436-441 (5th Cir. 2003) (Tex. law); *Wal-Mart Stores, Inc. v RLI Ins. Co.*, 292 F.3d 583, 588-94 (8th Cir. 2002) (Ark. law); *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97, 119 (Cal. 1975).

former Fifth Circuit, and elsewhere, concluded that Florida would follow the prevailing rule, and this Court agrees. *St. Paul Fire & Marine*, 2006 WL 1295408, at *4-5. In *Fowler*, for example, the Florida Supreme Court recognized that coverage is generally determined by the relevant policy language, a principle this Court has applied in the context of "other insurance" clauses. *See Gemini Ins. Co. v. Zurich Am. Ins. Co.*, No. 8:21-cv-2052-TPB-SPF, 2022 WL 3586538, at *3 (M.D. Fla. Aug. 22, 2022) (Barber, J.) (appeal pending). *Fowler*, however, noted that in a "narrow range of situations . . . a court may disregard specific policy language contained in an insurance policy." *Fowler*, 480 So. 2d at 1290. More specifically, *Fowler* held that, where there are separate insurance policies covering liability of a car owner/lessor and a lessee, if the owner is entitled to indemnity from the lessee because the owner is only vicariously liable under the dangerous instrumentality doctrine, the owner's insurer "is entitled to follow [the insurer] of the negligent driver *regardless of policy language.*" *Id.* at 1289 (emphasis supplied). The Court believes that given the logic of this ruling, Florida would follow the majority rule in the analogous situation presented here involving contractual indemnity between a contractor and subcontractor in the construction context. The Court finds Clear Blue's attempts to avoid application of the majority rule here unpersuasive.

Accordingly, the Court concludes that the "other insurance" provision in the Clear Blue excess policy should be disregarded, and Clear Blue is therefore primarily responsible under its excess policy for coverage of CCS's defense costs up to the excess policy limits and subject to any other applicable policy terms. Until

Clear Blue has exhausted the limits in its excess policy, it has no right to reimbursement from Gemini for amounts paid out to defend CCS.  Conversely, Gemini may recover from Clear Blue under the excess policy amounts Gemini paid out for services rendered prior to Clear Blue undertaking the defense of CCS.[4]

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED**:

1. "Clear Blue Insurance Company's Motion for Summary Judgment" (Doc. 45) is **DENIED** as stated herein.

2. "Gemini Insurance Company's Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 47) is **GRANTED** as stated herein.

3. "CPWR LLC, d/b/a Capital Contractor Services' Motion for Summary Judgment and Supporting Memorandum of Law" (Doc. 48) is **GRANTED** as stated herein.

---

[4] Given the Court's ruling on Clear Blue's responsibility under the excess policy, it does not matter whether Gemini tendered these fees and costs to Clear Blue prior to exhaustion of the Clear Blue primary policy.  Clear Blue raises various objections with respect to the precise amount payable to Gemini.  These issues will be addressed in a subsequent order if necessary.  This Order also does not rule on the assertion in CCS's counterclaim that Clear Blue breached its contractual duty to CCS by failing to settle Hippolyte's claim against CCS when it settled on behalf of Edgewater.  CCS's summary judgment motion does not seek summary judgment on that claim.  Clear Blue has continued to provide a defense for CCS, and the Court is inclined to believe that a claim for failure to settle would likely raise issues of fact and is, in any event, premature prior to a determination of CCS's liability in the underlying suit.  *See, e.g., Burek, Inc. v. AmGuard Ins. Co.*, No. 8:23-cv-0381-KKM-AEP, 2023 WL 3166464, at *3 (M.D. Fla. Apr. 28, 2023).  These issues will be addressed, to the extent necessary, in a subsequent order.

4. The Court by separate notice will set a status conference for April 24, 2024, at 1:30 p.m. to determine the nature of any further proceedings required and entry of final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 29th day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**